W. I. M. Corporation, Respondent, *v.* Teresa Cipulo, Appellant,
Impleaded with Ionic Holding Corporation and Others,
Defendants.

First Department, March 19, 1926.

Mortgages — action to foreclose second mortgage — foreclosure based on
clause allowing same where property is not maintained in reasonably
good repair — receiver of rents and profits of property which consisted
of building leased to tenants was appointed without notice — mortgage
can be foreclosed on ground of disrepair only where security is impaired
— affidavits show nominal repairs only are needed — evidence shows
equity of approximately twenty-five per cent of value of property over
amount of mortgages — security is not impaired — receiver cannot be
appointed under authority of mortgage in absence of impaired security
— appointment of receiver was improper — improper for court to
appoint surveyors to report on condition of building on motion to
vacate order appointing receiver.

The holder of a second mortgage containing a clause authorizing it to foreclose
the mortgage if the buildings are not maintained in reasonably good repair
cannot maintain foreclosure under that clause unless the building is in such
state of disrepair as to constitute an impairment of the security of the mortgage,
and since it appears in this case without contradiction that the only repairs
needed to the mortgaged building are nominal and represent an outlay of
approximately $600, there seems to be no ground for the foreclosure of the
mortgage under that clause.

The appointment of a receiver of the rents and profits of the mortgaged property
without notice under the authority of a clause contained in the mortgage
authorizing the appointment of a receiver without notice, was improper, since
a receiver cannot be appointed notwithstanding any provision in the mortgage,
unless the security is inadequate to protect the mortgagee. It appears in this
case that the equity over and above the amount of the first and second mort-
gages is approximately twenty-five per cent of the total value of the property,
and, therefore, the security is amply sufficient to protect the mortgagees.

It was improper for the Special Term, on a motion to vacate the order appointing
a receiver, to appoint surveyors to examine the property and to report to the
court in order to assist it in determining whether or not the plaintiff was justified
in declaring the whole principal of the mortgage due on the ground that the
property was not being maintained in reasonably good repair.

Appeal by the defendant, Teresa Cipulo, from an order of the
Supreme Court, made at the New York Special Term and entered ·
in the office of the clerk of the county of New York on the 5th
day of January, 1926, denying conditionally said defendant's
motion to vacate an order appointing a receiver *pendente lite* of
real property involved in an action to foreclose a second mortgage.

The defendant, Teresa Cipulo, is the owner of the equity of
redemption in certain real property consisting of a twenty-six-
story office building known as the Park Row Building, situated at
13–21 Park Row, borough of Manhattan, New York city.

*Siegeltuch, Butler & Kraft* [*Ashbel P. Fitch* of counsel; *Isidore Siegeltuch* and *Myron Butler* with him on the brief], for the appellant.

*Stoddard & Mark* [*Yorke Allen* of counsel], for the respondent.

MERRELL, J. The action was to foreclose a second mortgage held by the plaintiff upon the above-described premises. There is unpaid upon the mortgage sought to be foreclosed herein the sum of $1,160,000. The mortgage under foreclosure is subject to a prior mortgage upon which there is unpaid the sum of $2,700,000. There is an amortization fund in connection with the mortgage under foreclosure of $125,000. The real property is assessed at $3,600,000. It is not claimed by the plaintiff, respondent, that the premises are inadequate security for the amount unpaid on the bond and mortgage held by the plaintiff. The plaintiff, respondent, nevertheless, claims a right to foreclose its second mortgage upon the property by virtue of the 13th clause of the mortgage. This clause provides as follows:

"*Thirteenth:* That the whole of said principal sum shall become due at the option of the mortgagee, if the buildings on said premises are not maintained in reasonably good repair or upon the failure of any owner of said premises to comply with the requirement of any department of the State or City of New York, within three months after an order making such requirement has been issued by any said State or City Department."

The plaintiff asserts that the said Park Row Building is not maintained in reasonably good repair, and that by reason of such fact the plaintiff mortgagee elected to claim the whole amount of principal due upon its said mortgage. To justify the appointment of the receiver the plaintiff relies upon the 17th clause of the mortgage, which provides as follows:

"*Seventeenth:* That the holder of this mortgage in any action to foreclose it, shall be entitled (without notice and without regard to the adequacy of any security for the debt) to the appointment of a receiver of the rents and profits of said premises. And in case of a sale the said premises, or so much thereof as may be affected by this mortgage, may be sold in one parcel."

There are some 300 tenants of the building, and the total rental of the building is upwards of $600,000. The summons herein was issued and the complaint herein was verified on December 23, 1925, and on the same day the plaintiff applied at Special Term of the Supreme Court, without notice to any of the defendants, for the appointment of a receiver of the premises upon which plaintiff's mortgage was sought to be foreclosed and the court granted an order appointing a receiver and authorizing said receiver to demand,

collect and receive from the person or persons in possession of said premises or other persons liable therefor all rents then due and unpaid or thereafter to become due, with all the usual powers of a receiver in a foreclosure action, and enjoining the defendant, appellant, her agents and attorneys, and all other persons, save said receiver, from collecting the rents of said premises or from interfering in any manner with the property or its possession. The court required the receiver to give a bond in the sum of $5,000 for the faithful performance of his duties as receiver. The order appointing said receiver, together with a notice by the receiver of the appointment of an agent for the premises, was served upon the defendant on the day before Christmas, 1925. The defendant at once moved to vacate and set aside the order appointing the receiver. The application of the defendant, appellant, was by an order to show cause returnable at Special Term on the 29th day of December, 1925. The order to show cause granted by a justice of the Supreme Court stayed all proceedings on the part of the said receiver pending the determination of the defendant's motion to vacate. The motion to vacate, coming on to be heard, was denied and the stay, provided in the order to show cause, vacated. The order appealed from provided that the receivership was thereby temporarily continued to January 15, 1926, and three persons were named in the order to make a survey of the mortgaged premises between the 6th day of January, 1926, and the 15th day of January, 1926, both inclusive, the survey to be reduced to writing in quadruplicate, and one copy thereof to be furnished to the attorneys for the plaintiff, one to the attorney for the receiver, one to the attorneys for the defendant owner of the equity of redemption, and the fourth copy to be filed with the clerk of the court; that such survey show in detail the conditions respecting repair or disrepair of the building in question and to contain a statement expressive of the opinion of those making such survey, or a majority of them, as to whether or not, having regard to the age of the building, the purpose for which it is used and for which it was designed to be used and the prevailing standard of the upkeep of buildings of approximately the same age and like general uses, the building is maintained in reasonably good repair, reference in that regard being had to the provision of the mortgage sought to be foreclosed that the whole principal sum secured thereby should become due at the option of the mortgagee if the building on said premises was not maintained in reasonably good repair. The order appealed from further provided that in the event that said persons or a majority of them should ascertain that in their opinion said building is maintained in a reasonable state of

repair, this action should be discontinued, without costs to any party, and the reasonable charges of the survey, as fixed by the court on affidavits, should be paid by the plaintiff; that in the event that such persons or a majority of them should report that said building is not maintained in a reasonable state of repair, the receivership should be continued during the pendency of the action until the further order of the court, and that the expense of the survey and report might be paid by either party and taxed as a disbursement by the party paying the same; that any rents collected by any defendants, their agents or assigns, since the 23d day of December, 1925, less any moneys paid out and expended in connection with the expense and maintenance of said building, should be immediately turned over to the receiver; that on or before January 6, 1926, and before taking possession, the receiver file an additional bond in the sum of $45,000. From such order the defendant, appellant, at once appealed, and the receiver, by order to show cause granted by a justice of this court, was stayed, pending the determination of an application for a stay pending the appeal.

There is no claim that the appellant has made any default, either in the payment of principal, interest or taxes, or that the appellant has been guilty of any other violation of the terms of the mortgage, except that the plaintiff claims· that the defendant has failed to keep the premises in reasonably good repair.

As before stated, the foreclosure of the mortgage herein is upon the sole ground that the appellant has violated said provision of the mortgage. It seems to me perfectly plain that said clause may only be invoked where there is danger of impairment of the security of the mortgage, and that it is only where the property is permitted to become so out of repair as to endanger the security that the mortgagee may elect to claim the whole amount of the principal due. There is no proof contained in the papers upon which the application for the receiver was made that the buildings are in such state of disrepair as to in any degree impair the security. Nowhere in the papers upon which the receiver was appointed is it suggested as to what the cost of making the repairs would be. On the contrary, the appellant's affidavits set forth that the repairs are of minor importance and only such as had become necessary by the ordinary use, wear and tear of the building, with the exception of certain cracks in the terazzo and tile flooring, which cracks or checks were caused by the settling of the building soon after its construction, and were such as inevitably occurred in such form of construction. The total cost of the repairs suggested in the moving papers would not exceed about $600. There is no dispute on the

part of the plaintiff of such claim as to the nominal cost of the required repairs. As to the adequacy of the plaintiff's security for its mortgage debt, the papers upon the application to vacate the order appointing the receiver conclusively indicate that there is an equity in the property above the sum due on the mortgage under foreclosure and of the prior mortgage of $1,200,000. Notwithstanding such fact, a receiver was appointed to take from the owner thereof the possession of said premises and to receive rentals of over $600,000 a year upon giving a bond for $5,000.

As to the precise nature of the alleged disrepair into which the defendant has permitted the building to fall, very meager proof was furnished by the plaintiff. It stated, *first*, in the affidavit of an architect, that he had made an examination of the building and in walking through the corridors had discovered that the terazzo floors were cracked in a number of places; that the ceilings and walls were in need of paint, and that the tile floors in certain of the toilets were cracked; that the varnish was worn off from the window casings in places; that the ceilings and sidewalls were dirty, unsightly and needed paint, and that the marble in some of the toilets was stained. Besides the affidavit of this architect, the plaintiff produced the affidavit of an electrical engineer, who stated that he had inspected the elevator cars in the building and their operation, and that he noticed that said elevators were not running smoothly, but that there was a sound of vibration therein, which should not be allowed to continue. Another affidavit of a civil engineer was to the effect that he had observed the running of the elevator machines, and noticed that they were not running evenly, but with noise and vibration. This affiant states: " I have had some general elevator experience, and know that this should not be." The foregoing was the sum total of the proofs showing that the building in question was " not maintained in reasonably good repair." As before suggested, no claim is made as to the amount required to make such repairs, and, on the other hand, the averments in the affidavits on the defendant's motion to vacate, that the expenses of all repairs mentioned, with the exception of the cracks in the terazzo and tile floors, would not exceed $600, were not denied. As to the cracks or checks in the flooring, the testimony is undisputed that such cracks and checks had existed since about the time the building was built and were due to the usual and normal settling of the building; that such cracks could not be obviated except by entirely rebuilding the floors. The building is an old one, having been constructed over twenty-five years ago. The affidavits on defendant's application to vacate show to our satisfaction that the required repairs are of minor importance

and only such as are necessary by reason of the ordinary use of the building, and that said repairs are made from time to time, as required.

The circumstances under which this action was brought and the receiver appointed were such as to arouse the suspicion that the plaintiff had some ulterior motive in view in instituting its foreclosure and in embarrassing the defendant in her conduct of her property through the appointment of the receiver. Even were we to assume that the plaintiff was justified in bringing its action to foreclose, the affidavits submitted by the plaintiff as to the alleged disrepair were insufficient, and even were we to assume the sufficiency of such affidavits, nevertheless, in the absence of evidence showing an impairment of the plaintiff's security, we think there was no justification in either the bringing of the action or in the appointment of a receiver. The only possible claim in the moving papers that the security was inadequate arises from the claim that the mortgage under foreclosure and the prior mortgage amount to some $3,860,000, and that the premises were assessed for 1926 taxes in the sum of $3,600,000. It is, however, apparent that the assessed valuation of the property is much less than its true value. There has been no change in the assessed value since the plaintiff purchased the mortgage in suit on February 7, 1925, and since the plaintiff became the owner of said mortgage both mortgages have been reduced by amortization, and there is to the credit of a sinking fund to take care of future amortization payments due on the mortgage in suit over $125,000, which moneys are on deposit with the United States Mortgage and Trust Company. Not only this, but on the application to vacate, the appraisal of the Charles F. Noyes Company was presented showing a valuation of $1,200,000 in excess of the two mortgages. The Noyes appraisal was equivalent to a valuation of $5,000,000 upon the property, whereas the two mortgages aggregate but $3,860,000.

The law is well settled that the court will not appoint a receiver without reasonable ground therefor appearing, and that notwithstanding a clause in a mortgage entitling the mortgagee to obtain the appointment of a receiver without regard to the adequacy of the security, a mortgagee has not the absolute right to such appointment, and in order to have a receiver appointed must show that the mortgaged premises are inadequate security for his debt. In *Finch* v. *Flanagan* (208 App. Div. 251) it was held that in the absence of proof that the mortgage debt was not amply secured the appointment of a receiver was unjustified. In writing for the Appellate Division, Third Department, in *Finch* v. *Flanagan,* Mr. Justice Van Kirk said (at p. 254): "The court will not appoint a

receiver when no reasonable ground therefor is shown. [Citing cases.] A receivership in foreclosure is an extraordinary remedy. A receiver is the agent of the court. His appointment is for the protection of the interests of a party but his possession and acts are those of the court. The court will not assume the duty and responsibility of a receivership upon the consent of, or for the accommodation of, a person. By such a receivership the court takes possession of a person's property before judgment and before a debt or an amount to be satisfied is determined; it subjects a person and his property to a considerable expense and deprives him of the use of his property without justification unless good cause therefor is shown. To justify the appointment of a receiver on the application of the mortgagee it must appear that the mortgaged premises are an inadequate security for the debt and that the parties personally liable for the debt are insolvent."

In *Rabinowitz* v. *Power* (131 App. Div. 892), a case passing through this court, the *per curiam* opinion was as follows: " The plaintiff having failed to show that the property is inadequate security for the amount due upon the bond and mortgage was not entitled to have a receiver of the property appointed."

In *Graybill* v. *Heylman* (139 App. Div. 898) Mr. Justice SCOTT, writing for a unanimous court, said: " There is no positive allegation in the papers upon which this motion was made that the security is insufficient. It is true that the mortgage provides that a receiver may be appointed without regard to the value of the premises ' on five days' notice to the party of the first part, her heirs or assigns,' but it does not appear that such notice has been given. The case is much like *Jarmulowsky* v. *Rosenbloom* (125 App. Div. 542), wherein a similar order was reversed."

In *Eidlitz* v. *Lancaster* (40 App. Div. 446) Presiding Justice VAN BRUNT, writing for this court, said (at p. 447): " It is true that the mortgage contains a receiver clause; but it is well established that the existence of such a clause gives the mortgagee no absolute right to the appointment of a receiver, the action for foreclosure being a proceeding in a court of equity; but that such a clause is to be considered among the other features of the case in determining the propriety of granting a motion for the appointment of a receiver."

In *New York Building Loan Banking Co.* v. *Begly* (75 App. Div. 308) the Appellate Division, Second Department, held a covenant in a mortgage for the appointment of a receiver was not controlling in the absence of proof showing inadequacy of security. In *Thomas* v. *Davis* (90 App. Div. 1) this court held that a receiver clause similar to that in the mortgage in suit did

not bind the court, and that the adequacy of the security was the prime consideration.

We are, therefore, of the opinion that the appointment of the receiver in the case at bar was unjustified on the showing made by the plaintiff. The learned court at Special Term to which the application to vacate was addressed was evidently in doubt as to whether the plaintiff was justified in declaring the whole principal of its mortgage due, and appointed surveyors to examine the property and report to the court. However commendable the action of the court might have been in seeking to discover the actual condition of the building, we know of no provision of law or rule of practice justifying the action of the learned justice at Special Term.

The order appealed from should be reversed, with ten dollars costs and disbursements, and defendant's motion granted, with ten dollars costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.